381 So.2d 889 (1980)
James M. PAGE, Plaintiff-Appellant,
v.
AMERICAN MOTORIST INSURANCE COMPANY, LTD., Defendant-Appellee,
Western Casualty & Surety Company, Intervenor-Appellant.
No. 14041.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1980.
Rehearing Denied April 3, 1980.
*890 Charles W. Robinson, West Monroe, for plaintiff-appellant.
Charles W. Robinson, West Monroe, and Theus, Grisham, Davis & Leigh by R. L. Davis, Jr., Monroe, for intervenor-appellant.
Davenport, Files, Kelly & Marsh by Mack J. Marsh, Monroe, for defendant-appellee.
Before PRICE, HALL and MARVIN, JJ.
En Banc Rehearing Denied April 3, 1980.
MARVIN, Judge.
The trial court sustained a motion for summary judgment holding that the automobile liability policy in question did not provide uninsured motorist coverage for plaintiff, a guest passenger in the automobile described in the policy, who sustained personal injury in an accident on March 26, 1977.
The ultimate issue is whether or not the policyholder-driver of the car rejected UMC. Other questions concern the retroactive effect, if any, of Act 438 of 1977 (amending LRS 22:1406 to provide that the document in which an insured rejects UMC does not have to be physically attached to the policy) and the relationship of the policyholder's agent to the defendant insurer (broker, agent, or both).
The law requires that automobile liability policies written in Louisiana contain UMC unless UMC is rejected in writing by the insured. § 1406(D)(1)(a). Statements in an application which is not physically attached to the policy may not be used by the insurer to defeat coverage of the policy. LRS 22:618(A). Henderson v. Minnesota Mutual Life Ins. Co., 347 So.2d 53 (La.App.2d Cir. 1977); Smith v. North American Co. for Life, Accident & Health Insurance, 306 So.2d 751 (La.1975).
The 1977 amendment to § 1406, however, changed the law with regard to physical attachment of documents in which the insured has expressly by his signature rejected UMC. Such a document shall be conclusively presumed to be a part of the policy without regard to physical attachment. While the change may have substantive result, its effect concerns the admissibility into evidence of the document signed by the insured. This change, we hold to be in the nature of remedial or curative legislation which is applied retroactively. See Veal v. Interstate Fire & Casualty Company, 325 So.2d 795 (La.1975); Fullilove v. U.S. Casualty Company of New York, 129 So.2d 816 (La.App. 2d Cir. 1961), writs denied, 1961. Retroactive application of the statute, however, does not resolve the ultimate issue.
The insurer contends that the application, signed by the policyholder (Copeland) in *891 1975, contains a check-mark expressly rejecting UMC. Perkins, a principal in the insurance agency through which the policy was written, states by affidavit that he discussed the application in every detail with Copeland, that the application was completed before Copeland signed it and that Copeland agreed with Perkins' recommendation that UMC be rejected. Perkins' agency is a general insurance agency which writes insurance for about 30 insurance companies. Perkins was a former employee and agent of Allstate Insurance Company. Perkins acknowledged that he was aware that Copeland's policy in effect with Allstate before 1975 contained UMC and that Copeland's policy in effect after 1977 (written through Perkins' agency) contained UMC.
In opposition to the insurer's motion for summary judgment, Copeland denies that the application was completed when he signed it or that Perkins was in any way authorized to reject UMC for him. Copeland asserts that he told Perkins he wanted full coverage as he had under the Allstate policy, including UMC. Copeland denies signing the application in Perkins' office and asserts that during his several years of association he would telephone Perkins about Copeland's liability coverage of the automobiles used by Copeland as a car salesman.
A finding that Perkins was merely a broker or an agent for Copeland does not resolve the question of Perkins' authority to reject UMC. A principal is not bound by an agent who exceeds his authority. Likewise, a finding that a person is an agent for one party in a transaction, does not preclude, in all circumstances, a finding that he is also an agent for another party in the transaction. See La. CC Art. 3016, 3017; Tiner v. Aetna Life Insurance Company, 291 So.2d 774 (La.1974); Uhlich v. Medallion Realty, Inc., 334 So.2d 788 (La.App. 4th Cir. 1976); Kieran v. Commercial Union Ins. Co. of New York, 271 So.2d 889 (La.App. 4th Cir. 1973); 3 Couch on Insurance 2d 25:95, 26:152, 153. See also Scoggins v. Smith, 342 So.2d 1130 (La.App. 1st Cir. 1977).
The trial court sustained the motion for summary judgment on the grounds that Perkins was a mere broker or agent for Copeland and that the defendant insurer could not be held responsible for the absence of UMC in the policy. The trial court relied on Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728 (La.1973). There the plaintiff-insured sought maximum fire coverage. The agent procured only $10,000 coverage but showed on the invoice to the insured that he procured $100,000 coverage. The insurer paid the $10,000 proceeds to the insured and the insured sued the agent and the agent's errors and omissions insurer for the excess loss and obtained judgment. These principal defendants brought a third party demand against the insurer, which was denied. The Supreme Court affirmed judgment on the principal demand and on the third party demand, saying, with respect to the third party demand:
"(St. Paul [the errors and omissions insurer] contends that if Darbonne [the agent] is liable to Karam [the property owner-insured], Karam's principal [Maryland Casualty] would also be liable). [sic] There can be no solidary obligation here. Any liability of Maryland Casualty [the property insurer] to St. Paul would be extinguished by confusion. St. Paul ... would respond to Maryland Casualty for Darbonne's acts which might have caused a loss to Maryland Casualty, thus becoming at the same time the debtor and the creditor of Maryland Casualty. CC 2217, 2218." 281 So.2d at p. 733. Bracketed material supplied.
Here we are confronted with the agent's relationship with both the insured and the insurer and the insurer is a defendant in the principal demand. This relationship between Copeland and Perkins obviously grew out of their past dealings when Perkins was an Allstate agent. In view of Copeland's assertions in opposition to the motion for summary judgment, there are genuine issues of fact concerning the ultimate issue, Perkins' actual vs. ostensible authority to reject UMC, and whether or not dealings between Perkins and the defendant *892 insurer might have enlarged their relationship so that Perkins' actions or omissions might affect liability of the defendant insurer to the plaintiff.
The determination in summary judgment cases does not concern how the factual issue might be answered, but whether the factual issue exists. Givens v. Richland-Morris Agency, 369 So.2d 1184 (La.App. 2d Cir. 1979). The circumstances here presented do not support a determination that there is no genuine issue of material fact.
Summary judgment is REVERSED and this case is remanded for further proceedings.