Rayford E. **TOUCHSTONE**

v.

**LAND & MARINE APPLICATORS, INC., et al.**

Civ. A. Nos. 76–3364, 82–1613, 81–1823, 84–0111, 85–0068, 83–0617 and 81–1213.

United States District Court, E.D. Louisiana.

Jan. 3, 1986.

Jacobs, Manuel & Kain, Stanley J. Jacobs, Kenneth W. Manuel, Leonard S. Ungar, Wiedemann & Fransen, Lawrence D. Wiedemann, C. Scott Carter, New Orleans, La., for plaintiff.

Chaffe, McCall, Phillips, Toler & Sarpy, Robert B. Deane, E. Carroll Rogers, New Orleans, La., for Underwriters at Lloyds and Harbor Ins. Co.

Rudolph R. Schoemann, New Orleans, La., for Northwest Ins. Co., State Auto and Cas. Co. and Seguros America.

Bienvenu, Foster, Ryan & O'Bannon, Leonard A. Young, Franklin Jones, III, Micheline V. Gomila, New Orleans, La., for Gulf Ins. Co.

Abbott, Webb, Best & Meeks, Lawrence E. Abbott, Laurence Best, Daniel A. Webb, John P. Napolitano, Jr., New Orleans, La., for Penrod Drilling Co.

Koch & Koch, Irving H. Koch, Metairie, La., for State Sec. Ins. Co. and Great Atlantic Ins. Co.

Emmett, Cobb, Waits & Kessenich, Jack Mark Stolier, James A. Cobb, Jr., John H. Emmett, New Orleans, La., for St. Paul Ins. Co. and St. Paul Mercury.

Phelps, Dunbar, Marks, Claverie & Sims, Robert C. Clotworthy, Conrad S.P. Williams, New Orleans, La., for Lloyds of London.

Adams & Reese, Robert E. Couhig, Jr., New Orleans, La., for Lexington Ins. Co.

Bailey & Leininger, Donald D. Bann, Metairie, La., for Offshore Painting Contractors.

Bailey & Leininger, Scott E. Silbert, Metairie, La., for American Motorists Ins. Co.

Young & Richaud, Robert Young, George J. Richaud, New Orleans, La., for Great American Ins. Co. and A.L. Welding Products, Inc.

Kiefer, Kiefer & Schneider, John G. Lankford, Ignatz G. Kiefer, New Orleans, La., for Platform Coating Service, T.N. Gilbert, Donald Bird and Norman Quates.

Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Jack M. Alltmont, New Orleans, La., for Westchester Ins. Co., North River Ins. Co. and Industrial Indem. Co.

Terriberry, Carroll, Yancey & Farrell, John A. Bolles, New Orleans, La., for Steamship Mut. Underwriters.

Allen, Gooch, Bourgeois, Breaux & Robison, Ltd., St. Paul Bourgeois, Lafayette, La., for Market Ins. Co.

Paul J. Heim, Gene S. Palmisano, William J. Sommers, Jr., Thomas K. Wetzel, William B. Matthews, Jr., Randall M. Ebner, New Orleans, La., for Exxon Corp.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, James Diaz, Sr., Gary J. Russo, Rebecca F. Doherty, Lafayette, La., Borrello & Huber, Bruce J. Borrello, Metairie, La., for Lone Star Industries, Inc.

Barnard, Cassisa, Saporito & Elliott, Jerry L. Saporito, Metairie, La. for Insurance Co. of North America and Sandair Corp.

Burke & Mayer, James G. Burke, Jr., William B. Schwartz, James Womack, New Orleans, La., Jack M. McAdams, Warren B. Leach, Jr., Houston, Tex. for Marathon Oil Co.

Hulse, Nelson & Wanek, Craig R. Nelson, Christina P. Fay, New Orleans, La., for Mayronne Drilling, National Union Fire Ins. Co., Clemco Industries, and Mobil Oil.

McLoughlin, Barranger, Provosty & Melancon, Lloyd C. Melancon, New Orleans, La., for Chevron USA Inc.

Montgomery, Barnett, Brown & Read, Terry J. Freiberger, Arthur A. Crais, Jr., New Orleans, La., for Shell Oil Co.

Windhorst, Pastorek & Gaudry, Rene Pastorek, Daniel A. Ranson, Thomas L. Gaudry, Harvey, La., for Platform Coating Services, Inc., T.N. Gilbert, Donald L. Bird, Norman C. Quates, North River Ins. Co. and Holland American Ins. Co.

James J. Morse, John C. Ciolino, John A. Cvejanovich, John Morris, Marvin L. Schwartz, Bernard S. Dolbear, New Orleans, La., Bailey & Leininger, Leon A. Aucoin, Metairie, La., for Mayronne Drilling and Travelers Ins. Co.

Hailey, McNamara, Hall, Larmann & Papale, James W. Hailey, Jr., Michael P. Mentz, Andrew L. Hamlin, Metairie, La., for National Union Fire Ins. Co. and American Mut. Ins. Co.

Dotson, Babcock & Scofield, Matthew J. Hill, Jr., Andrew L. Gates, III, Lafayette, La., for Tenneco.

Michael A. Britt, Metairie, La., for Federal Ins. Co.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Charles E. Leche, New Orleans, La., for Industrial Inspection.

Lobman & Carnahan, Edward P. Lobman, Michael Mule, Elizabeth A. Alston, Metairie, La., for North River Ins. Co., Westchester Fire Ins. Co., U.S. Fire Ins. Co. and Industrial Indem.

Dale W. Poindexter, New Orleans, La., for Continental Ins. Co.

Lester J. Lautenschlaeger, Jr., New Orleans, La., for St. Paul Fire and Marine Ins. Co., St. Paul Companies and St. Paul Mercury Ins. Co.

Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for G.B.Q. Corp.

Hebert & Abbott, Wilton E. Bland, III, Roch P. Poelman, New Orleans, La., for Houston General Ins. Co. and Highlands Ins. Co.

Friend, Wilson, Spedale & Draper, Denis Paul Juge, Linda A. Liljedahl, Greg S. Abramson, New Orleans, La., for St. Paul Fire and Marine Ins. Co.

Owen, Richardson, Taylor, Mathews & Atkinson, Daniel R. Atkinson, Baton Rouge, La., for Old Republic Ins. Co.

Voorhies & Labbe, Patrick A. Juneau, Jr., Kathleen F. Drew, Lafayette, La., for Highlands Ins. Co. and O.K.C. Dredging.

Lozes & Lozes, Felicien P. Lozes, John J. Cooper, New Orleans, La., for Stan-Blast Abrasives, Mid-Continent Cas. Co. and National Fire & Marine Ins. Co.

Murphy & Simon, James S. Rees, III, David M. Tichanski, New Orleans, La., for Home Ins. Co. and Home Indem. Co.

Milton LeBlanc, New Orleans, La., for Tiger Equipment and Supply Co. and Land and Marine Applicators, Inc.

W. Keith Hurtt, Metairie, La., for Old Reliable Fire Ins. Co.

Liskow & Lewis, S. Gene Fendler, Deborah Bahn Price, Robert Booksh, Jr., Donald R. Abaunza, New Orleans, La., for Pennzoil Oil & Gas Co.

Gelpi, Sullivan, Carroll & Laborde, Gerard T. Gelpi, C. Gordon Starling, Jr., Donald Ensenat, New Orleans, La., for Land and Marine Applicators, Inc., Tiger Equipment and Supply Co., Travelers Ins. Co. and Gulf Oil Co., and Underwriters of Lloyds of London.

Burke & Mayer, Joseph P. Tynan, New Orleans, La., for Glacier General Assur. Co.

Stassi & Rausch, Robert G. Stassi, New Orleans, La., for Tiger Equipment and Supply Co.

Rudolph R. Schoemann, New Orleans, La., for G.B.Q. Corp. and Platform Coating Service, Inc.

Stone, Pigman, Walther, Wittmann & Hutchinson, John M. Landis, Noel J. Darce, New Orleans, La., for OKC Dredging.

McGlinchey, Stafford, Mintz, Cellini & Lang, John E. Galloway, Richard L. Duncan, Michael J. Maginnis, New Orleans, La., for St. Paul Mercury Ins. Co., Vanguard Ins. Co., Mississippi Valley Silica Co., and Insurance Co. of North America.

Abbott, Webb, Best & Meeks, John P. Napolitano, Jr., New Orleans, La., for Conoco, Inc.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Paul B. Deal, Jerald L. Album, John C. Reynolds, Michael T. Cali, Michael Furman, New Orleans, La., for Affiliated FM Ins. Co. and Aetna Cas. and Sur. Co.

Michael D. Meyer, New Orleans, La., for Segaras America Banamex, State Auto & Cas. Co., Old Reliable Fire Ins. Co., North West Ins. Co. and Mid-Continent Underwriters.

Montgomery, Barnett, Brown & Read, Terry J. Freiberger, New Orleans, La., for Gulf Ins. Co.

Turner, Young & Hebbler, Thomas M. Young, New Orleans, La., for Texas Fire & Cas. Co.

Lobman & Carnahan, Edward P. Lobman, Joseph Messina, Elizabeth A. Alston, Metairie, La., for Mississippi Valley Silica Co., Westchester Fire Ins. Co., North River Ins. Co. and Industrial Indem.

Poitevent & Acomb, John Poitevent, Robert B. Acomb, III, New Orleans, La., for Royal Exchange Assur. Co.

Phillip E. Stano, John R. Huthnanac, Alabama Dept. of Ins., Montgomery, Ala., receiver for Early American Ins. Co.

Dorsey, Walker & Chosholm, Bradford H. Walker, River Ridge, La., for Continental Cas. Co. and Continental Nat. Ins. Co.

Emmett, Cobb, Waits & Kessenich, James A. Cobb, John F. Emmett, New Orleans, La., for Platform Coating Service, Inc., G.B.Q. Corp. and Coating Specialists of La., Land and Marine Applicators.

Drury, Tabb & Grossel-Rossi, William G. Tabb, III, New Orleans, La., for Aetna Cas. and Sur. Co. and Land and Marine Applicators, Inc.

Adams & Reese, Robert A. Vosbein, Mark J. Spansel, Lynn M. Luker, New Orleans, La., for National Union Fire Ins. Co.

of Pittsburgh, Pa., Bellefonte Underwriters Ins. Co. and State Auto & Cas. Underwriters.

Bailey & Leininger, Leon A. Aucoin, Metairie, La., for Home Indem. Co.

Schoemann & Associates, Rudolph R. Schoemann, Julie Matherne, New Orleans, La., for Platform Coating and Norman C. Quates.

James H. Roan, Jr., New Orleans, La., for Peter Vicari.

William Barnett, pro se.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John R. Peters, Joseph W. McKearn, Glenn G. Goodier, Thurl Stalnaker, Jr., New Orleans, La., for Texaco, Inc., Gulf Oil Corp. and Getty Oil Corp.

Liskow & Lewis, Robert E. Holden, Julie E. Schwartz, James D. McMichael, New Orleans, La., for OKC Dredging, Inc. and City Service Oil.

McGlinchey, Stafford, Mintz, Cellini & Lang, Peter L. Hilbert, Jr., New Orleans, La., for Ocean Drilling & Exploration Co.

Partee, Leefe, Waldrip & Roniger, Emery N. Voorhies, New Orleans, La., for Thomas Gilbert.

Camp, Carmouche, Barsh, Hunter, Gray, Hoffman & Gill, Frederick S. Haygood, New Orleans, La., for M. Troy Moore and John Marcus Cruse.

Abbott, Webb, Best & Meeks, Daniel A. Webb, Richard A. Fraser, III, New Orleans, La., for Highlands Ins. Co. as insurer of Land and Marine Applicators, Inc. and Tiger Equipment and Supply Co.

Donald L. Bird, pro se.

McGlinchey, Stafford, Mintz, Cellini & Lang, P.C., Richard L. Duncan, New Orleans, La., for Ralph and Ronald Brumley and Margaret Hitchcock.

William B. Gibbens, III, David J. Plavnicky, Lea & Gibbens, New Orleans, La., for Daniel N. Hargett, Robert J. Hargett and Ronald J. Savoy.

Bailey & Leininger, Darryl D. Sicarelli, Metairie, La., for Ralph and Ronald Brumley.

Eugene J. Gomes, Jr., New Orleans, La., Dorsey, Walker & Chisholm, Bradford H. Walker, River Ridge, La., Deutsch, Kerrigan & Stiles, Christopher Tompkins, A. Wendel Stout, III, New Orleans, La., for Continental Cas. Co.

Lozes & Lozes, Felicien P. Lozes, John J. Cooper, Boggs, Loehn & Rodrigue, Thomas E. Loehn, Joseph von Rosenberg, New Orleans, La., for Commercial Union Assur. Co., Columbia Cas. Co., Northern Assur. Co. of America, Employers Liability Assur. Corp., Employers Commercial Union Ins. Co., Employers Surplus Lines and American Employers Ins.

Deutsch, Kerrigan & Stiles, Christopher Tompkins, A. Wendell Stout, III, New Orleans, La., Watson, Blanche, Wilson & Posner, Mary H. Thompson, Ambrose Ramsey, Felix R. Weill, Baton Rouge, La., for Insurance Co. of North America.

William V. Renaudin, Jr., Kenny M. Charbonnet, New Orleans, La., Watson, Blanche, Wilson & Posner, Mary H. Thompson, Baton Rouge, La., for Great American Ins. Co.

Milling, Benson, Woodward, Hillyer, Pierson & Miller, Charles Marshall, Bryan, Nelson, Allen, Schroeder & Stephenson, E.S. Ned Nelson, Charles G. Smith, Richard B. Launey, Maria I. O'Bryne Stephenson, Lugenbuhl, Larzelere & Ellefson, Charles E. Lugenbuhl, Russell D. Pulver, Anthony J. Stains, New Orleans, La., for Stan-Blast Abrasives Co.

Christovich & Kearney, Lawrence J. Ernst, Johnston & Duplass, Robert M. Johnston, Gary M. Zwain, New Orleans, La., for Pulmosan Safety Equipment Corp.

Abbott, Webb, Best & Meeks, Lawrence E. Abbott, Laurence E. Best, Daniel A. Webb, Roch P. Poelman, Hebert, Mouledoux & Bland, Wilton E. Bland, III, New Orleans, La., for Houston General Ins. Co.

Normann & Normann, Russell M. Cornelius, New Orleans, La., for OKC Dredging, Inc. and Continental Ins. Co.

Stassi & Rausch, Joseph W. Rausch, Hammett, Leak & Hammett, William S.

Marshall, Jr., Michael L. Mullin, New Orleans, La., for Mission Ins. Co.

Henderson, Hanemann & Morris, Charles Hanemann, Joseph Reilly, J. Mark Graham, Philip E. Henderson, Houma, La., William S. Marshall, Jr., Fred E. Salley & Associates, Fred E. Salley, Julia M. Core, New Orleans, La., for Land and Marine Applicators and Travelers Ins. Co.

Laborde & Lafargue, Cliffe E. Laborde, III, Lafayette, La., Courtenay, Forstall, Grace & Hebert, Carl J. Hebert, New Orleans, La., for Sandair Corp.

Courtenay, Forstall, Grace & Hebert, Thomas J. Grace, Theodore W. Brin, Captelli, Bencomo & Wicker, Raul R. Bencomo, Johnson & McAlpine, Ronald A. Johnson, Murphy, Simon & Rees, James M. Colomb, III, New Orleans, La., for Home Ins. Co.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Grady Hurley, Gino Rendeiro, Lea & Gibbons, III, Leefe & Roniger, Emery N. Voorhies, Gelpi, Sullivan, Carroll & Laborde, C. Gordon Starling, Jr., Charles A. Cerise, Jr., New Orleans, La., for Travelers Ins. Co.

Terriberry, Carroll & Yancey, John A. Bolles, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Terence L. Hauver, New Orleans, La., for American Bankers Ins. Co. of Florida.

Emmett, Cobb, Waits & Kessenich, Randolph J. Waits, New Orleans, La., for Switzerland General Ins. Co. and Great Atlantic Ins. Co.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the Motion of defendant insurers, members of the common interest defense group, consisting of employers and their insurers, for Summary Judgment dismissing the claims made against them by the plaintiffs in these consolidated cases. After hearing oral argument of counsel and reviewing the applicable law, the Court requested supplemental memoranda and took the matter under submission. The Court is now prepared to rule.

The principal questions before the Court are:

(1) Whether the recent holding in *Armstrong v. Land & Marine Applicators, Inc.*, 463 So.2d 1331 (La.App.1984) is binding precedent on this Court regarding the invalidity of the thirty-six month exclusion insurance provision contained in the policies at issue.

(2) Whether the holdings in *Armstrong* and *Scarborough v. Travelers Ins. Co.*, 718 F.2d 702 (5th Cir.1983) reflect an inconsistency in Louisiana law. (*Scarborough* upheld the conceptual propriety of "discovery" and "claims made" insurance provisions, in contrast with the philosophical concerns articulated in *Armstrong*, which struck down a thirty-six month provision).

## BACKGROUND

Generally, plaintiffs worked as sandblasters and painters on oil drilling platforms located in the Gulf of Mexico from 1959 and were employed by Land and Marine Applicators, Inc., Coating Specialist Co. and Platform Services, Inc.; they lived aboard their employers' vessels while servicing the platforms. Plaintiffs claim that during the sandblasting operations they were exposed to an environment saturated with silica dust which allegedly was ingested into their lungs and caused silicosis. Plaintiffs filed suit under the Jones Act, 46 U.S.C. § 688, and the General Maritime Law against their former employers, vessel owners, the owners of the offshore drilling platforms [1] on which they had worked, certain manufacturers of safety equipment and suppliers of sand used in the sandblasting operations, and the parties' insurers, asserting various negligence, unseaworthiness, and products liability claims.

The employers obtained insurance from Insurance Company of North America, Travelers Insurance Company, Old Reliable Tire Insurance Company, State Automobile Casualty Underwriters, Inc., Texas Fire

---

1. The platform owners as independent contractors were dismissed from suit by way of a Motion for Summary Judgment. See Order and Reasons issued November 6, 1985.

and Casualty Company, the Steamship Mutual Underwriting Association Limited, Harbor Insurance Company, Henry Ralph Rokeby Johnson, as designated underwriters subscribing policy number 67/13490/1, Highlands Insurance Company and Certain Underwriters at Lloyds. It is uncontested that each of the insurance companies extended liability coverage to the various named employers, and that all plaintiffs' claims are being asserted more than three years after the expiration of the policies.

Typically, the policies contain two categories of coverage for injuries to workers: Coverage A and Coverage B. Coverage A generally provides coverage for claims which arise under a workmen's compensation scheme, such as the Louisiana Workmen's Compensation Act, L.S.A.-R.S. 23:1021 et seq. or the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. Coverage B generally provides employers liability coverage for bodily injury or accident sustained by an employee of the insured arising out of and in the course of his employment; in this case, Coverage B includes coverage for maritime claims.

With respect to Coverage B, it is uncontested for purposes of this Motion that the exclusion section of each insurance policy included a provision which specifically indicated the policy would not apply to bodily injury by disease unless prior to thirty-six months after the end of the policy period a written claim was made, or suit was brought, against the insured for damages because of injury or death. In other words, claims brought against employers after thirty-six months from the expiration of a policy would not be insurance-protected.

▪ The disputed issue is whether the thirty-six month exclusion provision retains its vitality and validity in light of *Armstrong v. Land & Marine Applicators*, 463 So.2d 1331 (La.App.1984).

In *Armstrong*, the claimant brought an action for worker's compensation benefits for contracting silicosis as a result of working offshore as a sandblaster for fourteen years. The insurance companies denied coverage and argued that the thirty-six month exclusion provision prevented recovery under the policy. The Court framed the issue for review as "whether the thirty-six month exclusion violates public policy *insofar as worker's compensation is concerned* and whether the provision conflicts with LSA-R.S. 22:629." *Armstrong*, 463 So.2d at 1333 (emphasis added). Noting that the precise question had not been previously considered, the *Armstrong* Court was not persuaded by the Louisiana cases involving "claims made" or "discovery" insurance provisions, which had been previously upheld. Precisely, the parties disputing coverage in those cases, according to *Armstrong*, were the parties to the contract; and the particular considerations unique to the injured workers' rights were not addressed. See *Oceanonics, Inc. v. Petroleum Distributing Co.*, 292 So.2d 190 (La.1974) (no recovery under a general liability policy which limited coverage for property damage occurring during the policy period even where the delictual act occurred during the policy period); *Livingston Parish School Board v. Fireman's American Insurance Co.*, 282 So.2d 478 (La.1973) (no recovery under professional liability insurance which limited coverage to claims for policy-covered negligence discovered and reported even where the negligent act occurred during the policy period); *Cormack v. Prudential Insurance Co. of America*, 259 So.2d 340 (La.App.1972), writ refused, 261 La. 824, 261 So.2d 230 (1972) (no recovery under a group health and accident policy requiring certain medical treatment be administered within six months of an accident even though treatment could not be administered because of physical impossibility).

But in 1983 the Fifth Circuit decided *Scarborough v. Travelers Insurance Co.*, 718 F.2d 702 (5th Cir.1983). That Court held the thirty-six month exclusion provision did not violate Louisiana's public policy and did not violate LSA-R.S. 22:269, the Louisiana Insurance Code, because it did not place a time limit on the right to bring

suit; it merely defined the duration of the covered risk. How to deal with *Scarborough?* The state court perceived a difference. The *Armstrong* Court underscored the fact that the parties to the *Scarborough* litigation were the contracting parties, not the injured workman. Moreover, the *Armstrong* Court found the *Scarborough* discussion of the thirty-six month exclusion inapplicable and distinguishable from the circumstances presented in *Armstrong*. The *Armstrong* circumstances, the state court said, involved an injured worker who, by statute, relinquished his right to pursue an action in tort and recover damages for his injuries. The social trade-off was the prompt, if limited, recovery of workmens' compensation benefits without the procedural and substantive impediments inherent in tort litigation.

The *Armstrong* Court emphasized its perception of the competing interests and the need to protect the worker:

> Under the statute, [Louisiana Workers' Compensation Act] the worker is provided protections superior to the insurance contract rights of the employer and insurer and the right to recovery overrides any limitation if he is as factual matter entitled to recovery. The worker's compensation insurer is bound to cover the entire liability of the employer.

> .    .    .    .    .

> [B]ecause the act clearly seeks to compensate the employee for the unique and problematic disease of silicosis and asbestosis, a restriction by an insurance provision which denies coverage unless a claim is brought within a certain period has the potential effect of barring recovery in direct violation of the worker's compensation act, in particular LSA–R.S. 23:1162.

*Armstrong,* 463 So.2d at 1335.

Thus, *Armstrong* was particularly sensitive to the policy concerns of the worker's compensation law, and the need to favor the interests of the worker against those of the insurer. If this Court, sitting in diversity, were presented with a worker's compensation claim it would be *Erie*-bound to follow the mandate of the Louisiana court that the thirty-six month exclusion offends Louisiana's public policy regarding statutory benefits to injured workers.

But this Court questions the viability of *Armstrong* as a guide in the interpretation and effect of such exclusions, and would narrowly construe the holding of *Armstrong* to the context in which it arose; a worker's compensation claim. It is instructive to point out that the *Armstrong* Court avoided the question of the validity of the thirty-six month provision in a maritime personal injury setting. That question was answered in *McMillian v. Coating Specialist, Inc.,* 427 F.Supp. 54 (E.D.La.1976) and in *Scarborough v. Travelers Ins. Co.,* 718 F.2d 702 (5th Cir.1983), and those cases are followed here.

In *McMillian,* a Jones Act seaman brought a claim against his employer, who had obtained insurance to cover claims for bodily injury. Included in the insurance contract was a thirty-six month provision excluding coverage. Plaintiff failed to bring his claim within the time period. Judge Rubin held that the exclusion did not violate the public policy of Louisiana and the seaman's claim was disallowed. In *Scarborough* the Fifth Circuit faced the same issue, and noted strong analogies with the "claims made" and "discovery" provisions which were upheld by Louisiana courts. See *Scarborough,* 718 F.2d 702, 709.

With respect to the asserted conflict between the thirty-six month provision and the Louisiana Insurance Code, LSA–R.S. 22:629, this Court agrees with the *Scarborough* resolution of what the Court sees as a false conflict. LSA–R.S. 22:629 provides in part:

> "A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement:
> "...
> "*(3) Limiting right of action against the insurer to a period of less than one*

*year from the time when the cause of action accrues in connection with all insurances unless otherwise specifically provided in this Code.*

"B. Any such condition, stipulation, or agreement in violation of the Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract." (Emphasis added.)

The Louisiana Insurance Code guards against provisions which attempt to limit the right of action against the insurer. The thirty-six month exclusion provision, on the other hand, does not impose limitations on the right of the injured party to bring suit to enforce an alleged insured liability or to determine whether coverage exists. The exclusionary provision, says *Scarborough,* merely contractually defines the "duration of the covered risks provided by the policy. There is nothing in LSA–R.S. 22:629 A(3) which limits the right of the insurer to define, and place limitations upon, the duration of the coverage afforded by its policy. Instead, the statute limits the right of an insurer to reduce the time period within which the insured (or the injured party) can bring suit against the insurer." *Scarborough,* 718 F.2d at 711.

Although seamen are considered wards of the Court and are afforded greater protection by the courts, this Court reads *Armstrong* to be inapplicable and distinguishable here because the Jones Act remedy imposes a negligence remedy against the defendants, not a benefits remedy as does the Louisiana workmen's compensation program. Conceptually, the philosophical bases for the two remedies differs materially in social purpose and scope.

Considering, then, the Jones Act, the totality of the circumstances, and *Scarborough's* construction of Louisiana law in the maritime context, this Court is bound to follow *Scarborough.* To the extent *Scarborough* and *Armstrong* reflect an inconsistency in local law regarding "claims made" and "discovery" policies, this Court construes *Armstrong* to be limited to the context of a worker's compensation claim and follows *Scarborough's* affirmation of

the thirty-six month exclusion as being analogous to "claims made" or "discovery" provisions because of the differing social goals reflected in *Armstrong* and *Scarborough,* and because *Armstrong* specifically hesitated to speak to the admiralty question. (Finally, this Court is not unaware of the confusion and chaos which would be visited upon the insurance industry by varying its ruling on exclusion provisions depending on the parties before the Court).

Therefore, this Court holds the thirty-six month exclusion provisions in the movers' policies are valid and not contrary to public policy. The movers' Motion for Summary Judgment is GRANTED, and the claims asserted by plaintiffs' against the movers are DISMISSED as not covered under the respective movers' policies.

## SUPPLEMENTAL ORDER AND REASONS

Defendants and third party defendants bring this Motion for Summary Judgment seeking a dismissal of certain plaintiffs' claims because they have prescribed.

### BACKGROUND

Plaintiffs worked as sandblasters and painters beginning in 1959 for Land and Marine Applicators and Coating Specialists, Inc. They claim they contracted silicosis during their employment and filed suit under the Jones Act and the General Maritime Law against their employers, their employers' insurers, the owners of the offshore drilling platforms on which the sandblasting work was performed, the safety equipment manufacturers, the safety equipment distributors, and the suppliers of the sand used during the sandblasting operations; plaintiffs assert various claims for negligence and unseaworthiness, and responsibility under theories of product liability. Thus, these cases present a group of negligence claims against Jones Act employers, claims for unseaworthiness as to the vessels, and product liability claims against the manufacturers and distributors of the sandblasting materials used.

In their Motion, the defendants and third party defendants assert that the Louisiana prescription period of one year applies as to those defendants who manufactured and distributed the materials used; that the three year limitations period of the Jones Act governs certain of the claims (the claims against plaintiffs' employers), and that the admiralty doctrine of laches does not apply.[1]

This Motion presents two critical questions which must be treated before the Court can dispose of the issues as they relate to the claims of each plaintiff affected. The threshold question is, what law applies in determining whether any of these claims is prescribed? Second, when does the cause of action for damages from a continuous or invidious disease accrue for purposes of whatever prescription or limitations period the Court decides is applicable?

## THE LAW APPLICABLE

The proponents of this Motion argue that this is a diversity case (which it is), and that the law of Louisiana should be applied, not admiralty. They place a heavy reliance on the teachings of *Executive Jet*, and assert that the requisite maritime nexus is missing here. They also remind the Court that local law applies to accidents which occur on stationary platforms located in the Outer Continental Shelf by virtue of the provisions of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331. See *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969).[2] Plaintiffs strenuously contend that the jurisdictional basis for this case sounds in admiralty and, therefore, the three year limitations period of the Jones Act and the doctrine of laches should govern all questions regarding the timeliness of the suits brought.

The real focus of these arguments deals with the claims involving the manufacturers and distributors of the products used by plaintiffs during their sandblasting work.

The essential facts are not in dispute. Plaintiffs lived aboard vessels owned by their employers and performed all crew services necessary to the operation, maintenance, and function of the vessels. They performed sandblasting operations on offshore platforms located in navigable waters. They used respirators (masks) and sand material during those operations. The sand, the sand pots, the compressors, and the helpers were all aboard the vessel during the sandblasting operation, and a supply hose ran from the vessel to the platform feeding the sand from the sand pots on the vessel to the sandblasting gun. Plaintiffs were injured while performing the operations on the platforms over navigable waters as they were preparing the platforms for painting.

The now undisputed premiere case regarding this issue is *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). *Executive Jet* requires, as a condition to invoking admiralty jurisdiction, a finding that the locality of the injury in question was maritime and, also, that a sufficient maritime nexus existed in connection with the activities of the person injured. The parties do not disagree that the locality requirement is met, because the injuries occurred on navigable waters. But they hotly dispute whether or not the requisite maritime nexus is present and that becomes the focal point of the Court's analysis.

Plaintiffs rely on *Kimble v. Noble drilling Corp.*, 416 F.2d 847 (5 Cir.1969) to support their contention that the claims against the manufacturers and distributors

---

**1.** The parties do not seem to seriously dispute that, as to the Jones Act employers, the three year limitations period of the Jones Act applies and, therefore, the Court will not discuss that issue except as it might relate to an individual plaintiff's claim.

**2.** Since this Court finds that diversity jurisdiction exists, and for the reasons hereafter expressed, the Court does not reach questions presented by *Rodrigue* or the applicable law under the Outer Continental Shelf Lands Act.

should be treated as admiralty claims. This Court disagrees. *Kimble* did not speak to the issue of an admiralty products liability claim against a non-maritime defendant; the case merely supports the proposition that plaintiffs' claims against the Jones Act employers and vessel owners are indeed maritime in nature.

The cases which control the Court's analysis are *Woessner v. Johns-Manville Sales Corp.*, 757 F.2d 634 (5 Cir.1985) and *Kelly v. Smith*, 485 F.2d 520 (5 Cir.1973), *cert. den.*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).

*Kelly* teaches that four factors need to be examined in determining whether the second requirement of *Executive Jet*[3], maritime nexus, is satisfied. Our examination must center on these four factors:

1. The function and role of each of the parties.
2. The types of vehicles and instrumentalities involved.
3. Causation and type of injury.
4. The traditional concepts of the role of admiralty law.

### The Function and Role of the Parties

■ The mask manufacturers and distributors, and the suppliers of sand, have no unique connection to the maritime industry. The same masks and the same sand are used by landside sandblasters. The sand pots aboard the vessels are not component parts of the vessels. The mere fact that the defendants have provided a product that finds its way onto vessels, without more, is not sufficient to justify the extension of admiralty jurisdiction, which *Executive Jet* teaches should be done "with caution". See *Woessner v. Johns-Manville Sales Corp.*, 757 F.2d at 644. The protective masks themselves were merely transported aboard the vessels and were subsequently used on the stationary platforms only; they too were not component parts of the vessel. The plaintiffs' work was performed only on the platforms. Simply stated, they were hired to prepare the metal surfaces of the platforms for painting.

### Types of Vehicles and Instrumentalities Involved

The employers' vessel transported the plaintiffs to their work sites ... the stationary platforms. True, the men lived aboard the vessels and their involvement on the vessels implicates maritime concerns. But the tortious injury which they claim to have sustained occurred while they were on the platforms, making the involvement of the vessels themselves at best tangential. Thus, the vehicle is the platform, not the vessel.

The instrumentalities are obviously sand and protective sandblasting masks. It is not seriously contended that those products imply any unique maritime character; in fact, their generic service betrays the validity of such an argument. And the "tools and equipment" used in the sandblasting operations (unlike the navigational equipment and safety devices of a vessel) possess few, if any, noticeable maritime attributes. Compare *Woessner, supra, Myhran v. Johns-Manville Corp.*, 741 F.2d 1119, 1122 (9 Cir.1984), and *Owens-Illinois, Inc. v. United States District Court*, 698 F.2d 967, 971 (9 Cir.1983) with *Sperry Rand Corp. v. Radio Corp. of America*, 618 F.2d 319 (5 Cir.1980). Thus, the vehicles and instrumentalities present no particular maritime nexus.

### Causation and Type of Injury

In a *Kelly*-type analysis, the Fifth Circuit in *Sohyde Drilling & Marine Co. v. Coastal States Gas Production Co.*, 644 F.2d 1132 (5 Cir.), *cert. den.*, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981), held that oil well blowouts on land were indistinguishable from oil well blowouts in the Gulf of Mexico. Similarly, *Woessner* held that asbestos related injuries sustained by shipyard insulators were indistinguishable from the injuries of land based asbestos insulators. And, it cannot be argued that the plaintiffs' condition of silicosis differs

---

3. The dual requirements of *Executive Jet* were ~~approved~~ in *Foremost Insurance Co. v. Richard-* son, 457 U.S. 668, 102 S.Ct. 2654. 73 L.Ed.2d 300 (1982).

(nor do the causes) from the condition of the land based worker performing the same work. The cause of the injury and the type of injury, silicosis, have no unique maritime character.

*Traditional Concepts of the Role of Admiralty*

Finally, this Court returns to the admonition in *Executive Jet* to "proceed with caution" in expanding admiralty jurisdiction. This case does not genuinely impact any of the traditional concerns of the admiralty. Those concerns involve navigational rules, collisions, seaworthiness of vessels, maintenance and cure, general average, cargo damage and salvage claims, and limitation of liability concepts.

In the final analysis, this Court finds the holding in *Woessner* to be compelling. For in *Woessner*, the Fifth Circuit observed with reasoning strikingly applicable here:

"The question properly asked is whether the actual tasks the workers perform bear any inherent relationship to maritime activity, that is, whether the plaintiffs' jobs are identical to those undertaken by land-based workers and are connected to maritime affairs merely because performed aboard ship, or whether they are tasks somehow unique to maritime service or work traditionally done by seamen ... The plaintiffs here were engaged in trades, such as pipefitting, welding, and insulating, linked more with the land than with the sea. *Their skills and training are those of landsmen, not of sailors* ... Since exercise of admiralty jurisdiction may preempt state regulation of matters traditionally committed to local resolution, courts are to interpret congressional grants of admiralty jurisdiction restrictively ... The state interest in providing uniform treatment to similarly situated asbestos workers is great. The risks encountered by appellants differ little, if at all, from the risks encountered by construction workers whose entire careers were spent installing or repairing asbestos products on land. These similarly situated workers cannot avail themselves of the special rules of admiralty law and are confined to state law remedies and are bound by the state law statutes of limitation. The appellants' claims are identical to those of thousands of other plaintiffs and involve questions of tort law traditionally committed to resolution under state law. Resolution of these claims does not require the expertise of an admiralty court as to navigation or water-based commerce.... *The traditional concepts of the role of admiralty law and the demands of federalism* provide yet another reason for declining to exercise admiralty jurisdiction...."

757 F.2d at 644, 648–649 (emphasis added)

Thus, as to the claims against the manufacturers and distributors of the masks and the sand suppliers, the Louisiana prescription period of one year applies.

**ACCRUAL OF THE CAUSE OF ACTION**

■ At what point does the pertinent prescription period commence? Those supporting this Motion argue that in industrial disease cases the cause of action accrues once the injured employee is aware or should be aware of his condition under the circumstances. See *Fletcher v. Union Pacific R.R. Co.*, 621 F.2d 902 (9 Cir.1980). The underpinnings of that argument are found in the teachings of *U.S. v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) and *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Those cases, and the argument of the movers, focus on what has come to be called the Discovery Rule. Plaintiffs, on the other hand, urge that the cause of action does not accrue and prescription does not commence to run until the injured employee has actual knowledge of his injury and its cause; they also seem to be seeking refuge within the protection of the so-called continuing tort theory, which basically argues that prescription hardly ever commences to run because each exposure to the harmful irritant is a new cause of action. Plaintiffs' arguments find some modest support in law; but not in the Fifth Circuit. And Louisiana law regarding commencement of

the one year period does not differ materially from federal law regarding the three year period of the Jones Act. See *Duhon v. Saloom*, 323 So.2d 202 (La.App.1975).

The Fifth Circuit interprets *Kubrick* and *Urie* as requiring that the limitations period for occupational diseases begins to run "when the employee knows, or reasonably should know, that his condition is a disease which arose out of his employment". See *Dubose v. Kansas City Southern Railway Co.*, 729 F.2d 1026, 1030 (5 Cir.1984). That standard, says the Fifth Circuit, represents the "latest definition of the discovery rule". 729 F.2d at 1030. And any argument that an injured employee's condition could have many complicated medical causes of which the employee might not be aware begs the question and must be rejected:

> "The discrepancy may be greater, however, between actual knowledge and constructive knowledge of the fact of causation. When a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice suggests an erroneous causal connection or otherwise lays to rest a plaintiff's *suspicion regarding what caused his injury.*"

*Dubose*, 729 F.2d 1031 (emphasis added)

The critical issue then, as reflected in *Dubose*, is when symptoms are manifested, not necessarily when the disease is diagnosed. 729 F.2d at 1032.

We now turn to the claims of each plaintiff as they relate to this Motion.[4]

AUSTIN SNOW

Snow worked as a sandblaster for Coating Specialists, Inc. from 1963 through 1964; he worked for Land and Marine from 1964 through 1972. Mr. Snow is also a smoker, and he experienced shortness of breath in approximately 1975. He learned that silicosis was a lung disease in either 1977 or 1979, and, some time thereafter, that silicosis caused shortness of breath and that it was related to sandblasting. In 1972 Mr. Snow was admitted to a hospital complaining of pulmonary difficulties, and he was diagnosed as having bronchitis. His 1972 x-rays were normal. On January 7, 1982 he was admitted to a hospital in Pasadena, Texas for surgery (unrelated to this case). At that time routine chest x-rays were made at the request of Dr. Angel. Dr. Angel noted an unusual nodulation on Mr. Snow's lung and referred the x-ray for review by Dr. Mitchell Smolkin. Dr. Smolkin was aware that plaintiff was a sandblaster for approximately thirty years and he noted the nodular pattern in the x-ray as "almost definitely represents silicosis,". Dr. Smolkin also noted that the x-ray might be interpreted as revealing other conditions as well as silicosis. Dr. Smolkin testified in deposition that he told Mr. Snow of his findings but that it was impossible for him to determine the exact problem based upon only one visit and he told the plaintiff to seek another doctor for a confirming opinion.

Mr. Snow claims that he first learned he had silicosis in October 1984 after his counsel engaged Dr. Morton Brown. He also states that he worked in the sandblasting industry as late as May 1985 for an employer who is not a defendant here.

█ Did Snow have enough information to excite his suspicion regarding the cause of his injury in order to trigger the commencement of the one year prescription

---

4. Plaintiffs' argument regarding the benefits of the continuing tort theory focuses on another question of some interest. Each plaintiff filed suit more than one year after ceasing employment with his last sandblasting employer. Since the plaintiffs were not employed as sandblasters for more than a year before filing suit, and since the complaint is prescribed on its face, movers argue that the burden of proof ˙ ˙ᶠ˙˙ to the plaintiffs to prove otherwise. *Yar-* *brough v. Louisiana Cement Co.*, 370 So.2d 602 (La.App.), *cert. den.*, 373 So.2d 531 (La.1979). The Court does not find that it has been necessary to reach the question of who has the burden of proof in connection with this Motion. Further, if a plaintiff cannot be said to be reasonably aware of the connection between his disease and his work environment, it cannot be said that the plaintiff has the burden of proof.

period? This plaintiff presents a close question.

The radiograph evidence detected by both Drs. Angel and Smolkin revealed damages to Snow's lung. Dr. Smolkin opined that the lung condition was most likely silicosis, but could have been from a number of other diseases. That information was given to Snow, who knew that sandblasting could cause silicosis. Snow was urged by Dr. Smolkin to seek out additional medical advice. He waited for two years to do that.

Nevertheless, a similar case is *Bateast v. Mine Safety Appliances Co., et al,* 732 F.2d 940 decided by the Fifth Circuit April 25, 1984. There the argument was presented that the plaintiff should have inquired concerning his condition and if he had done so he would have discovered the employment connection to his illness. *Bateast* was a silicosis case in which a claim of prescription was asserted. The plaintiff suspected he had lung disease but he never asked what the problem was during a hospital stay because he was afraid to find out. The Court reversed a summary judgment because genuine issues of material fact were in dispute regarding the plaintiff's ignorance and whether or not his ignorance was willful and resulted from his own negligence. Here, Mr. Snow knew silicosis could be related to sandblasting; he was told by a doctor that he may have had silicosis, or any one of five other diseases. He was not given a definite diagnosis of silicosis and at the time he was not symptomatic. Although Snow's claim might appear to be a weak one, nothing in the record supports the fact that Snow had silicosis at the time or that if he had inquired further at that time he would have learned he did indeed have silicosis. Snow claims that he first learned of his condition in October 1984 and that it was related to his employment. Therefore, genuine issues of material fact are in dispute and the Motion for Summary Judgment as to this claim is DENIED.

## JAMES YAWN

Yawn was employed as a sandblaster from 1963 to 1971. He first became aware of the term silicosis some time in 1969 or 1970 and he knew that sandblasters he worked with had died from the disease. His own brother filed a suit in 1981 claiming he had silicosis which was employment related and he discussed his brother's case with him. In September of 1983 his family physician, Dr. Crenshaw, thought his x-rays were abnormal and referred them for review to a pulmonary specialist, Dr. Charles Parkman. Dr. Parkman told plaintiff in September 1983 that his x-rays were abnormal and that he should be hospitalized for further evaluation. He failed to appear for an examination which was scheduled in October 1983 and Dr. Parkman wrote plaintiff telling him that he should act soon so that they could decide what might be going on in the lung. Yawn sought no further treatment or evaluation until December 1984, when Dr. Morton Brown diagnosed his condition. Yawn's own deposition testimony indicates that he experienced shortness of breath from the early 1970's onward. Further, he was admitted to Covington County Hospital in 1980 for shortness of breath. He was released with a diagnosis of chronic obstructive pulmonary disease associated with bronchitis. (Thereafter, came the various episodes of his abnormal x-ray readings and reference to Dr. Parkman.) Yawn knew Dr. Parkman was a specialist in lung diseases. Dr. Parkman clearly told him in October of 1983 that something was wrong with his lungs.

In Louisiana prescription commences from the date on which damage is sustained. Article 3536, Louisiana Civil Code of 1970, as amended. Damage is sustained when it has manifested itself with sufficient certainty to be susceptible of proof in court. *Vanguard Underwriters Insurance Co. v. Ray's Plumbing Co.,* 312 So.2d 111 (La.App.1975). Prescription does not commence to run until the plaintiff has actual or constructive knowledge of the tortious act, the damage, and the causal relationship between the tortious act and

**1216**

the damage. See *Duhon v. Saloom,* 323 So.2d 202 (La.App.1975).

█ The critical issue in connection with Mr. Yawn is his constructive knowledge of the damage. The Louisiana Supreme Court defines constructive knowledge as:

"Whatever notice is enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription."

*Cartwright v. Chrysler Corp.,* 255 La. 597, 232 So.2d 285, 287 (1970).

Yawn certainly had sufficient notice to excite his attention when a pulmonary specialist in lung diseases, Dr. Parkman, indicated that plaintiff had an abnormal chest x-ray. The concern was underscored by the doctor's letter of October 1983 in which he urged Mr. Yawn to contact him so that the previously planned hospitalization could be scheduled. Yawn should have been on his guard and those facts alone should have excited further inquiry. He would have learned, as stated by Dr. Parkman, that he might be suffering from silicosis at that time (October 1983). Mr. Yawn, then, was armed with the knowledge of his own possible condition and the knowledge that silicosis was caused during sandblasting operations and, further, that some of his co-workers had died from silicosis. He knew silicosis often resulted in shortness of breath which he himself experienced from the early 1970's onward and, therefore, he was put on constructive notice, if not actual notice, of his injury more than one year before the filing of his suit on January 7, 1985. The fact that he did not receive a specific diagnosis until December 10, 1984 from Dr. Brown is of no moment, as *Woessner* and *Dubose* teach.[5]

Contrary to plaintiff's argument, Dr. Parkman did not diagnose plaintiff's 1983 condition as an inflammatory process.

That diagnosis was made in 1980. The 1983 x-rays were a far different matter in which Dr. Parkman noted nodular infiltrates.

Thus, James Yawn had constructive notice of his claim in October 1983. As to the product liability claims, the Motion for summary judgment is GRANTED. As to the Jones Act and unseaworthiness claims, which are governed by a three year limitations period, Mr. Yawn timely filed suit January 7, 1985 and the Motion for Summary Judgment is DENIED.

OSCAR HUMBLE

Oscar Humble died and his widow brings both a wrongful death action and a survival action. Both claims were filed January 10, 1984. It is conceded that Mrs. Humble's wrongful death claim was timely filed because he died May 24, 1983. But a sharp dispute is raised over the timeliness of the survival action.

It is argued that Mr. Humble was aware of the diagnosis of silicosis for many years prior to his death. Specifically, Dr. David Scheinhorn, Humble's primary physician from 1978 on, personally advised Mr. Humble on several occasions between 1978 and 1983 that his silicosis condition was caused by the inhalation of silica during the course of his employment as a sandblaster. Plaintiff asserts that Mr. Humble worked in sandblasting until November of 1982. (The defendants claim that his last year of employment was 1979. It does appear, however, that Mr. Humble continued in sandblasting work until 1982.) Plaintiff seems to urge a continuing tort theory. Thus, it is claimed, damage was not "sustained" until he terminated his employment in 1982.

But the argument that his last period of exposure was November 1982 is of no help. Suit was filed January 10, 1984, far more than one year from the last period of Mr. Humble's employment and far more than one year from the date of the 1978 diagnosis. Furthermore, ample evidence supports

[5] Mr. Yawn explains his failure to seek the mmended hospitalization urged by Dr. Parkman because he didn't have enough money for the hospitalization. That excuses nothing.

the position of the defendants that Humble knew of his injury and its causation more than three years before filing suit. Dr. Scheinhorn saw Mr. Humble in 1968 for silicosis and he advised plaintiff's counsel that Humble had been followed at Ochsner Clinic from 1968 to 1978 with progressive pulmonary fibrosis, which he thought was related to sandblasting. Humble's x-rays were abnormal as early as 1968 and in 1969 he had been followed at Ochsner for pulmonary asbestosis. He experienced shortness of breath, coughing and wheezing from 1976 onward. A previous biopsy in 1969 showed silicosis and 1976 x-rays revealed extensive changes related to silicosis. In short, the progression of Humble's disease has been well documented up until May 24, 1983, the date of his death. Further, the Humble family physician, Dr. Schiro, made a diagnosis of silicosis in 1968. Mrs. Humble does not dispute that fact.

▮ In summary, Oscar Humble had a confirmed diagnosis of silicosis in 1969 and he knew in 1978 or 1979 that sandblasting activities caused silicosis. Suit was not brought until January 10, 1984. Thus, unless Mrs. Humble can take advantage of the doctrine of laches, the survival action as to all defendants is time-barred. Laches governs the timeliness of plaintiff's claims with respect to unseaworthiness against the vessel owner defendants.[6] We are governed here by the three year limitations period of the Jones Act. *Watz v. Zapata Off-shore Company,* 431 F.2d 100 (5 Cir. 1970). Since this action was brought after the three year period expired, plaintiff has the burden of proof regarding the two lynchpins which avoid laches: excusable delay, or absence of prejudice. Either will avoid a dismissal for laches. See *Watz v. Zapata Off-shore Company,* 431 F.2d at 112. Here, a lapse of time is implicit in occupational disease cases. But no real question of prejudice is presented by the lapse of time. Further, whether a defend-

ant is prejudiced and whether delay is excusable are genuine issues of material fact which are clearly in dispute for purposes of this Motion. Thus, the Motion for Summary Judgment with respect to the claims of unseaworthiness against the vessel owners is DENIED.

### JOE TOUCHSTONE

Joe Touchstone died January 20, 1982. A survival action was filed April 21, 1982. Joe Touchstone's diagnosis of silicosis was made November 17, 1981. Clemco argues that Joe Touchstone knew of the manifestation of the disease more than three years prior to his death and they rely on the general maritime doctrine of laches and the analogous three year period of the Jones Act in measuring the timeliness of this claim.

Mrs. Touchstone, in her deposition, suggests that her husband knew of his condition approximately ten years before his death but her testimony is equivocal on that point. His daughter similarly testified.

The Touchstones argue that no defendant has been prejudiced as a result of the delay in filing in suit and, further, delay was excusable.

Although Clemco relies upon the three year limitations period of the Jones Act and the doctrine of laches, this Court believes that the one year period in Louisiana law applies to mask manufacturers, such as Clemco.

Prior to the diagnosis of silicosis, Joe Touchstone had disease. But on November 17, 1981 Dr. William Larkin diagnosed that Joe Touchstone had contracted the disease silicosis. Thus, the limitation period commenced November 17, 1981. Suit was filed April 21, 1982, well within the time period, no matter which period applies. Accordingly, the Motion for Summary Judgment

---

**6.** On October 6, 1980, Congress enacted a provision which provides that "a suit for recovery of damages for personal injury or death arising out of a maritime tort must be commenced within three years from the date the cause of action accrued." 46 U.S.C. § 763a. This provision is applied prospectively and, therefore, does not govern the Humble case because his cause of action accrued before October 6, 1980.

seeking a dismissal of the survival action of Joe Touchstone is DENIED. Whether he knew or should have known of his condition prior to November 17, 1981 is a genuine issue of material fact which remains in dispute.

RAYFORD E. TOUCHSTONE

This claim presents a distinctly different issue and cuts across the concept of interruption of prescription as to joint and solidary obligors in Louisiana law.

Rayford E. Touchstone was employed as a sandblaster by Coating Specialists from 1964 through 1967. On September 10, 1975 he was seen by Dr. G.B. Shaw, a pulmonary disease specialist. He was referred to Dr. Shaw by Dr. Larkin, his personal physician. X-rays revealed nodules on the lungs. That finding as well as Dr. Shaw's awareness that plaintiff was a sandblaster formed the basis for his "presumptive diagnosis of silicosis." Although Dr. Shaw could not specifically remember telling plaintiff of his diagnosis and its cause, it was his standard practice to inform patients in that regard. In any event, plaintiff confirmed Dr. Shaw's advices to him and admits that Dr. Shaw told him something was wrong with his lungs and that it was probably silicosis. Again, that occurred September 10, 1975. Rayford E. Touchstone knew what silicosis was and knew that it affected the lungs, even before he saw Dr. Shaw. In fact, he knew before 1974 that a person could get silicosis from sandblasting. Thus, it is clear, that by September 1975 plaintiff knew or should have known all of the factual elements that would support his claim; he had reason to believe that he had silicosis and that it was a result of his employment. The case took a curious turn at that point.

On October 30, 1975 plaintiff filed suit in federal court against his Jones Act employer, who thereafter made a general appearance to the suit by answering. But on May 10, 1976 Rayford E. Touchstone voluntarily dismissed that suit without prejudice and without the objections of the Jones Act employer. Thereafter, he again filed suit federal court on October 29, 1976, and by amended complaint on March 30, 1980 he sued the other defendants.

Thus, as to Rayford E. Touchstone's claim, the issue is what effect, if any, did the filing of the first suit in federal court against the Jones Act employer have against the manufacturer and other defendants in this case?

Article 3463 (former Article 3519) of the Louisiana Civil Code is central to the issue: "An interruption of prescription resulting from the filing of a suit in a competent court and in proper venue or from service of process within the prescription period continues as long as the suit is pending. Interruption is considered never to have occurred if plaintiff abandons, voluntarily dismisses, or fails to prosecute the suit at trial."

Ordinarily, a voluntary dismissal will operate as though suit was never filed, but, if the defendant makes a general appearance Article 3463 does not apply. See *Hebert v. Cournoyer Oldsmobile-Cadillac GMC*, 419 So.2d 878 (La.1982).

What affect does *Hebert* have on the so-called solidary obligations of the alleged joint tortfeasors (the manufacturers and those defendants similarly situated)? In other words, did the first suit against the Jones Act employer interrupt prescription as to any alleged solidary obligors (joint tortfeasors) by virtue of the general appearance of the Jones Act employer?

Although neither side has pointed to any case which directly addresses this issue, logic and common sense require that this Court hold that the interruption of prescription as to the Jones Act employer similarly interrupts prescription as to any defendant found to be a joint tortfeasor.

Article 1799 of the Louisiana Civil Code provides that the interruption of prescription as to one joint tortfeasor is sufficient to interrupt prescription as to all those parties determined to be joint tortfeasors. This Court believes that the reasoning of *Hebert* and other cases is logically extended to the situation in which the Jones Act employer generally appears prior to a dis-

missal of the suit so that prescription was interrupted as to the Jones Act employer, even though the other defendants were not parties to that suit. In *Hidalgo v. Dupuy*, 122 So.2d 639 (La.App.1960) a suit in federal court against an insurance company, which was thereafter dismissed, interrupted a suit brought in state court nine months later against the insured truck driver. See also *Louviere v. Shell Oil Company*, 509 F.2d 278 (5 Cir.1975) in which the Fifth Circuit approved the idea that "all prescriptions affecting the cause of action sued upon are interrupted as to all defendants by the commencement of a civil action in a court of competent jurisdiction". 509 F.2d at 286 (the Fifth Circuit construed what it took to be the public policy of Louisiana as reflected by Louisiana courts).

In the case of Rayford Touchstone, if the first suit had not been voluntarily dismissed without objection, it cannot be argued that the other defendants could not have been brought in the federal court proceeding at a later time by way of amended petitions or third party demands in spite of claims of prescription. Thus, if they are determined after trial to be joint tortfeasors, prescription was timely interrupted. Accordingly, the Motion for Summary Judgment with respect to this claim is DENIED.

For the foregoing reasons,

IT IS ORDERED:

The Motion for Summary Judgment as to the claim of Austin Snow, civil action number 85–1327, is DENIED.

The Motion for Summary Judgment as to the claim of James Yawn, civil action number 85–0068, is GRANTED in favor of the manufacturer and similarly situated defendants. As to the Jones Act and unseaworthiness claims, the Motion for Summary Judgment is DENIED.

As to the claim of Oscar Humble, civil action number 84–0111, the wrongful death action is timely and the Motion for Summary Judgment does not reach that claim. As to the survival action, the Motion for Summary Judgment is GRANTED, except as to the claim of Oscar Humble against the vessel owners.

As to the claim of Joe Touchstone, civil action number 82–1613, the Motion for Summary Judgment is DENIED.

As to the claim of Rayford E. Touchstone, civil action number 76–3364, the Motion for Summary Judgment is DENIED.